# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

In re:                                         Chapter 13
                                               Case No. 12-12848
MARIBETH COBB

            Debtor

## MEMORANDUM AND ORDER

The Chapter 13 Trustee objects to the Chapter 13 Plan (Doc. #14) (the "Plan") filed by

the Debtor Maribeth Cobb.  The Plan provides for payment of 100% of the unsecured creditor

claims over a five-year period, but the proposed monthly Plan payment is less than the Debtor's

monthly disposable income. In his objection (Doc. #25) (the "Objection"), the Trustee contends

the Plan is not proposed in good faith under Bankruptcy Code § 1325(a)(3)[1] because the Debtor

is not paying her monthly disposable income to fund the Plan.  If she did, she would be able to

pay her creditors in full in a shorter period of time.  After considering the parties' arguments, and

based on the facts of this particular case, the Court finds that the Plan is proposed in good faith.

## JURISDICTION

The Court has jurisdiction over this contested matter and the parties pursuant to 28

U.S.C. §§ 1334 and 157(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## UNDISPUTED FACTS

The material facts in this matter are not in dispute.  The Debtor filed her voluntary

petition under Chapter 13 of the Bankruptcy Code on August 31, 2012, and submitted her Plan

---

[1] The Bankruptcy Code is contained in 11 U.S.C. § 101, *et. seq.*  Unless otherwise indicated, all further statutory and section references are to the Bankruptcy Code.

on September 21, 2012.  The Form B22C (Doc. #17) indicates that the Debtor is an "above median" debtor: "a debtor whose current monthly income is above the applicable state median income for the debtor's household size …."  *In re Jones*, 374 B.R. 469, 470 (Bankr. D.N.H. 2007).  Consequently, the applicable plan commitment period for the Debtor is five years.  *See* Bankruptcy Code § 1325(b)(4)(A)(ii).  As calculated under §§ 1325(b)(2) and (3), the Debtor's monthly disposable income is $1,094.99.  In her Plan, the Debtor proposes to pay in full all allowed general unsecured claims through monthly payments of only $214.00 over five years, an amount substantially lower than the Debtor's monthly disposable income.  The Trustee asserts that this factor alone demonstrates the Debtor's lack of good faith in proposing the Plan.

## DISCUSSION

The Trustee concedes that the Plan complies with Bankruptcy Code § 1325(b)(1).  This provision provides that a Chapter 13 plan must satisfy one of two alternatives when the Trustee or a creditor objects to confirmation:[2]

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Bankruptcy Code § 1325(b)(1).

---

[2] A debtor need satisfy only one, not both prongs, of this section.  *See, e.g., In re Winn*, 469 B.R. 628, 630 (Bankr. W.D.N.C. 2012); *In re Johnson*, No. 10-03184C, 2011 WL 1671536, at *3 (Bankr. N.D. Iowa May 3, 2011); *Jones*, 374 B.R. at 471; *see also In re Ellis*, No. 12-51637, 2012 WL 5865906, at *2 (Bankr. M.D. Ga. Nov. 16, 2012) ("[T]he Court holds that a plan satisfies section 1325(b) if unsecured claims will be paid in full [despite the fact that] claims could be paid in a shorter period of time if all monthly disposable income was contributed to plan payments.").

The Debtor has elected to proceed under subsection (A) of § 1325(b)(1).  Nevertheless,

the Trustee contends the Plan has not been proposed in good faith because, in his words:

> The fact that the debtor, even after her proposed Plan payment of
> $214.00 per month, without any explanation whatsoever will have
> excess income of $1,100.00 per month to retain for herself is not
> indicative of dealing with her creditors in good faith.  While her
> creditors wait for five years for funds legitimately due them, she
> will have been able to save over $60,000.00 for herself.
>
> …
>
> The debtor here has sufficient income to pay her creditors in one
> year.   That is not necessarily what must be done but what is
> unacceptable and certainly not any indication of good faith is for
> the debtor to propose a plan which would pay her creditors over a
> period of five years when she has the unquestioned ability to do it
> in a far shorter period of time.

Trustee's Memorandum in Support of Objection to Confirmation (Doc. #37 at pp. 2, 6).

In support of his position, the Trustee cites a number of cases involving plans providing

for less than full payment to unsecured creditors.  These cases are inapposite to the Debtor's Plan

which provides for full payment to unsecured creditors.  *See, e.g.*, *In re Salisbury*, No. 11-14161

(Bankr. D.R.I. Aug. 16, 2012) (Doc. #86) (Hillman, J.) [3] (plan proposed only a five percent

distribution to unsecured creditors);[4] *In re Grutsch*, 453 B.R. 420, 421 (Bankr. D. Kan. 2011)

---

[3] Other circumstances differentiate *Salisbury* from the present case, including the fact that the debtors in *Salisbury* sought to retain "$598 per month of SSI [Social Security income] which enabled them to accumulate a surplus of more tha[n] $35,000 while also stripping off two unsecured mortgages totaling more than $90,000." *Salisbury*, at p. 5.  *But see Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314 (10th Cir. 2012) (overruling a trustee's "good faith" objection where a debtor excluded Social Security income from his "projected disposable income" because the Bankruptcy Code allowed him to do so by excluding Social Security income from the definition of "current monthly income" under Bankruptcy Code § 101(10A)(B)); *Beaulieu v. Ragos (In re Ragos)*, 700 F.3d 220, 227 (5th Cir. 2012) ("Having already concluded that Debtors' plan fully complied with the Bankruptcy Code, it is apparent that Debtors are not in bad faith merely for doing what the Code permits them to do.  We thus hold that retention of exempt social security benefits alone is legally insufficient to support a finding of bad faith under the Bankruptcy Code.").

[4] Subsequent to Judge Hillman's ruling in *Salisbury*, the debtors experienced a change in recurring medical expenses and filed a Motion to Reconsider the denial of confirmation of their plan.  As a result of these changed circumstances, the amount of the debtors' excess Social Security income was aligned with the monthly proposed payments to be contributed to the plan, and this Court granted the motion and confirmed the plan.

3

(addressing a motion to modify a confirmed plan to reduce the five year term of the plan "without paying unsecured creditors in full …."); *In re Amos*, 452 B.R. 886 (Bankr. D. N.J. 2011) (no payments were to be made to unsecured creditors under the plan).

This Court recognizes that the Court of Appeals for the First Circuit Court eschews per se rules involving good faith determinations under Bankruptcy Code § 1325(a)(3). *See Berliner v. Pappalardo (In re Puffer)*, 674 F.3d 78, 82 (1st Cir. 2012) ("[W]e, like other courts, are reluctant to read per se limitations into section 1325's good faith calculus.").  In accord with the First Circuit's instruction in *Puffer*, and consistent with the approach adopted in the two cases cited by the Trustee involving full payment plans, this Court declines to adopt a per se rule that a 100% creditor payment plan has not been proposed in good faith <u>solely</u> on the basis that the debtor can satisfy creditor claims sooner.  *See In re Johnson*, No. 10-03184C, 2011 WL 1671536, at *5 (Bankr. N.D. Iowa May 3, 2011) ("This Court finds no bad faith simply because Debtor has the ability to pay more each month and thus can repay creditors more quickly."); *In re Stewart-Harrel*, 443 B.R. 219, 224 (Bankr. N.D. Ga. 2011) ("The Court is not inclined to issue a *per se* rule that a failure to pay 100% of available net monthly income is bad faith.") (emphasis in original).

As these other courts have done in addressing the "good faith" issue in similar contexts, this Court will engage in a "totality of the circumstances" analysis.  *See Puffer*, 674 F.3d at 82 ("We believe that the totality of the circumstances approach to adjudicating good faith should apply equally to inquiries under section 1325."); *Johnson*, 2011 WL 1671536, at *3 ("When determining whether a plan has been proposed in bad faith, a court should look to the totality of the circumstances …."); *Stewart-Harrel*, 443 B.R. at 224 ("[T]he court must review the totality

4

of the circumstances in determining good faith."); *see also In re Richall*, 470 B.R. 245, 250-51

(Bankr. D.N.H. 2012) (utilizing the "totality of the circumstances" test in assessing good faith

with respect to a full payment plan).

In *Stewart-Harrel*, a case involving a 100% payment plan that the Trustee cites in support

of his Objection, the court determined that an evidentiary hearing on good faith was necessary

because the trustee raised additional factors concerning the plan which she asserted demonstrated

bad faith, "including payments made on a Hummer ahead of unsecured creditors and on an

accelerated basis."   443 B.R. at 224.   In response to these arguments, the debtor in *Stewart-*

*Harrel* "raised issues of extenuating circumstances."  *Id.*

Unlike the situation in *Stewart-Harrel*, no evidentiary hearing is necessary in this matter

before the Court because the facts are undisputed; the only basis for the Trustee's assertion that

the Debtor failed to establish good faith in proposing her plan is her financial ability to pay her

creditors sooner than the five-year Plan period.  The Trustee does not allege any other factors in

support of his Objection. *See Richall*, 470 B.R. at 251 (finding no lack of good faith in a 100%

payment plan where "the Trustee has not alleged any facts to suggest the Debtors have

inaccurately stated their debts and expenses, that the Debtors have been less than honest in the

bankruptcy process, or that the Debtors have misled the Court."); *Johnson*, 2011 WL 1671536, at

*5 (overruling a chapter 13 trustee's similar objection to a 100% payment plan, concluding the

"Trustee does not allege that the Debtor has engaged in subterfuge, fraud, or other manipulative

actions.").

After discussing the changes made to Bankruptcy Code § 1325(b) pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[5] Judge Deasy in *Richall* explained his rationale for concluding that a debtor's ability to pay creditors over a shorter period of time, standing alone, did not constitute bad faith:

> The meaning of "good faith" should not be expanded beyond the meaning intended by Congress. … Since Congress specifically addresses a debtor's ability to pay and the commitment of disposable income in § 1325(b), a "good faith" analysis under § 1325(a)(3) need not require consideration of the amount of a debtor's payments unless the proposed payments otherwise contribute to a finding of serious misconduct or abuse or unfair manipulation of the Code. … To do so would require this Court to create yet another test to determine the appropriate plan length for debtors who can afford to pay unsecured creditors in full over a term less than the applicable commitment period. The application of any such test in this case would necessarily result in a judicially created amendment to the provisions of § 1325(b)(1). This Court does not have the authority to create any such amendment.

470 B.R. at 250 (internal quotations and citations omitted).

I concur with the conclusions reached by the courts in *Richall* and *Johnson*. There is no evidence before this Court regarding serious misconduct, abuse, unfair manipulation of the Bankruptcy Code or any factor raised by the Trustee alleging a lack of good faith other than the amount of the monthly payments the Debtor is committing to the Plan. Absent other factors that may impinge upon the good faith analysis, the mere fact that the Debtor has the ability to pay her creditors in a shorter time frame does not constitute a lack of good faith. "When a Chapter 13 debtor calculates his [or her] repayment plan payments exactly as the Bankruptcy Code … allow[s] him [or her] to, … that [calculation] cannot constitute a lack of good faith." *Anderson v.*

---

[5] A number of key bankruptcy provisions were modified by BAPCPA to curb what Congress perceived to be abuses in the bankruptcy system, particularly in the consumer arena.

*Cranmer (In re Cranmer)*, 697 F.3d 1314, 1319 (10th Cir. 2012); *see also Johnson*, 2011 WL 1671536, at *4 ("This Court has also similarly held that, absent other factors indicating bad faith, it is not subterfuge or unfair manipulation simply to take advantage of the provisions of the Code.").

**CONCLUSION**

On the specific facts before me, and with no other factors relating to the good faith analysis presented, I hold that the Debtor's Plan is not lacking in good faith simply because the Debtor could pay her creditors in full over a shorter time frame, but has instead chosen to utilize the full five-year commitment period applicable to above-median debtors. While the Court does not particularly like the outcome, the Court is confined to the facts presented in this case. Those facts do not provide the Court with the authority to require the Debtor to pay her creditors in full over a shorter time period. The Trustee's Objection is overruled, and the Plan may be confirmed. The Trustee shall file a proposed confirmation order consistent with this Memorandum and Order within seven days of the date hereof.

Diane Finkle
United State Bankruptcy Judge

Date: 1/24/2013

Dated: January 24, 2013